IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 19, 2001

## IN RE: ESTATE OF CONSTANTINE ANAGNOST

**Appeal from the Chancery Court for Knox County**
**No. 55484-1     Daryl R. Fansler, Chancellor**

### FILED APRIL 19, 2001

### No. E2000-02321-COA-R3-CV

This litigation involves a claim against an estate. The claimant asserts that the decedent breached a contract which purportedly obligated the decedent to convey to the claimant a certain parcel of property upon the claimant's satisfaction of his contractual obligations. The estate moved for summary judgment, arguing that the issues relating to the existence of the purported contract had been decided adversely to the claimant in an earlier suit, thereby barring the present claim under the doctrine of *res judicata.* The trial court granted summary judgment to the estate, and the claimant now appeals, asserting that the prior judgment does not bar the instant claim. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

George Anagnost, Knoxville, Tennessee, Pro Se.

Melinda Meador, Knoxville, Tennessee, for the appellee, Mrs. Virginia Anagnost, Personal Representative for the Estate of Constantine Anagnost.

### OPINION

I.

The appellant, George Anagnost, and his sister, Athena Anagnostopoulos, owned a tract of property located in Knox County that was sold on August 23, 1991, in satisfaction of unpaid city and county property taxes. Knox County purchased the property at the tax sale for $84,716.07. Shortly thereafter, George's brother, Constantine Anagnost, and his wife, Virginia Anagnost, purchased the property from Knox County for $93,187.68. Constantine and his wife borrowed $80,000 from Valley Fidelity Bank and Trust Company to partially fund the purchase, and the property was conveyed to them subject to the right of redemption of George and Athena. The sale of the property

to Constantine and Virginia was confirmed by a judgment entered by Chancellor Frederick D. McDonald on October 14, 1991.

George alleges that during the one-year redemption period, he and Constantine agreed that George would manage the property and pay Constantine's note to the bank, and that when the note was eventually paid off, Constantine would return the property to George. George began making the monthly payments of $892.06 on the note on September 30, 1991.

After the expiration of the one-year redemption period, Constantine petitioned the court for a tax deed conveying the property to him and Virginia. The Chancery Court held a hearing on the matter on December 18, 1992. George alleges that he was not present at this hearing. At the conclusion of the hearing, Chancellor McDonald specifically found that the redemption period had expired without redemption being effected and directed the Clerk and Master to issue a tax deed and a writ of possession to Constantine and Virginia. The Chancellor's order reflects that his findings were made upon consideration of "statements made by counsel for [Constantine and Virginia], *statements made by George Anagnost*, statements made by the Clerk and Master, the file at large and the records of this case." (Emphasis added.)

On January 18, 1993, George filed a handwritten motion claiming that he had not been present at the December, 18, 1992, hearing and requesting the court to set aside its order. In his motion, George asserts that he "had an agreement with Constantine Anagnost that Constantine Anagnost would buy the property at the tax sale for or on behalf of [George] with a loan from his bank and then [George] would pay that loan off and keep the property."

A hearing on this handwritten motion was held on February 4, 1994. After hearing the parties' arguments, the court found as follows:

> Well, insofar as [the motion] alleges that [George] was not present for the time the case was heard, he was present. The Court recalls him being here. So, I don't think that's any ground, and we cannot grant the motion for that reason. And we considered the claims at that previous hearing and overruled them.

Chancellor McDonald subsequently denied the motion and again directed the Clerk and Master to issue a tax deed and a writ of possession to Constantine and Virginia.

On March 4, 1994, George filed a petition to rehear. The deed conveying the property to Constantine and Virginia was executed and delivered on April 4, 1994, along with a writ of possession, and George's petition to rehear was denied on April 5, 1994. George continued to make payments on Constantine's note until June or July, 1994, when Constantine told the bank[1] to discontinue accepting payments from George.

---

[1] By this time, Valley Fidelity Bank and Trust Company had been sold to or merged into First Tennessee Bank.

The instant litigation was commenced after Constantine died on August 25, 1998, and Virginia was appointed his personal representative. On November 20, 1998, George filed a claim against the estate alleging "[b]reach of contract regarding a redemption agreement." On January 21, 1999, he filed another claim for breach of the redemption agreement on behalf of Athena, for whom he had power of attorney.[2]

The Estate moved for summary judgment, arguing, *inter alia*, that the claims had already been adjudicated in the prior proceeding. In his response to the Estate's motion, George asserted the following as an additional fact constituting a material fact rendering summary judgment inappropriate:

> This agreement continued to be in effect even after Constantine and Virginia Anagnost obtained the Deed to the property. Even after the Deed of [sic] the property was transferred to Constantine and Virginia Anagnost, Constantine Anagnost on behalf of himself and Virginia Anagnost told George Anagnost that Virginia and he did not want the property. After all, they were brothers, and that it was Virginia that wanted to make sure that the Deed served as guarantee that George would give them their money back. It was not until June of 1994 when Constantine Anagnost instructed First Tennessee Bank not to accept George Anagnost's payments and begun [sic] to treat the property as his own and come in possession of it.

The court, on January 19, 2000, found that George's assertion that the agreement continued to be in effect even after Constantine and Virginia obtained the deed to the property added nothing to the assertions made by George in the prior litigation and was thus barred. The court then stated as follows:

> [T]aking the assertions of Mr. Anagnost and his counsel in the light most favorable to them they have at best alleged a land sale contract entered into between Constantine Anagnost and George Anagnost subsequent to December, 1992. At oral argument, the Court observed potential problems associated with such a claim but nevertheless will grant claimant an additional thirty days within which to supplement his response to the personal representative's motion for summary judgment.

---

[2]George also filed two other claims on January 21, 1999: (1) a claim amending his prior claim clarifying that the property was initially owned by both him and Athena and ultimately purchased by both Constantine and Virginia; and (2) a claim seeking damages in the amount of $8,000,000 and asserting that such damages resulted from the breach of the contract. This latter claim is not at issue on this appeal.

In response to this order, George filed an unverified supplemental response to the Estate's summary judgment motion. Through this response, George presented (1) an unsigned promissory note, the original of which he apparently claims to have executed and given to Constantine, and (2) a copy of the $80,000 cashier's check from Valley Fidelity Bank and Trust Company made payable to Constantine and Virginia. While the relevancy of these documents to the alleged "land sale contract" claim is not entirely clear, it is apparently George's position that both the note and the check, in some undisclosed way, relate to that land sale contract.

Upon review of George's supplemental response, the court granted summary judgment to the Estate. George now appeals, raising the following two issues: (1) whether the trial court erred in granting summary judgment to the Estate on the basis of *res judicata*; and (2) whether there was an agreement between the parties subsequent to the entry of the order following the prior proceeding.

II.

A.

Before determining whether summary judgment is appropriate in this case, we must first establish the applicable principles. "The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Massengill v. Scott*, 738 S.W.2d 629, 631 (Tenn. 1987). The purpose of the doctrine is to "promote[] finality in litigation." *Lien v. Couch*, 993 S.W.2d 53, 55 (Tenn. Ct. App. 1998) (citing *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn.1976)).

An assertion of *res judicata*, if it is to prevail, must be supported by a showing that "(1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was final and on the merits, (3) the same parties or their privies[3] were involved in both proceedings, and (4) both proceedings involved the same cause of action." *Lien*, 993 S.W.2d at 56; *see also White v. White*, 876 S.W.2d 837, 839 (Tenn. 1994).

A prior judgment is *res judicata* as to all matters at issue in the prior proceeding as they existed at the time the prior judgment was rendered. *White*, 876 S.W.2d at 840. It bars the litigation not only of those matters actually determined in the prior action, but also those that reasonably could have been litigated in the prior action. *American Nat'l Bank and Trust v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). A prior judgment does not, however, operate to prohibit the later consideration of rights that had not accrued at the time of the earlier proceeding or the re-examination of the same question between the same parties when the facts have changed or new facts have occurred that have altered the parties' legal rights and relations. *See White*, 876 S.W.2d at 839-40.

---

[3]The term "privies" includes "those who are so related by reason of the facts showing an identity of interest." *Cotton v. Underwood*, 223 Tenn. 122, 442 S.W.2d 632, 634-35 (1969).

B.

Having decided the relevant parameters of our inquiry, we must now determine whether summary judgment for the Estate is appropriate under the record now before us. In deciding whether a grant of summary judgment is appropriate, courts are to determine "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. Courts "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993).

The party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. *Id*. at 215. Once the moving party satisfies its burden of showing that there is no genuine issue of material fact, the burden then shifts to the nonmoving party to show that there is a genuine issue of material fact requiring submission to the trier of fact. *Id*.

George argues that the trial court erred in granting summary judgment to the Estate because, so the argument goes, it is unclear from the record what claims George raised at the December 18, 1992, hearing and on what basis the court dismissed his subsequent handwritten motion. We disagree, and we therefore hold that the trial court did not err in granting summary judgment to the Estate.

We are of the opinion that George's assertion – that he and Constantine had an agreement whereby Constantine would procure a loan for the purpose of purchasing the property and would return the property to George when George paid off the loan – was litigated in the prior proceeding and determined adverse to George as a final judgment on the merits. The chancellor's order directing the Clerk and Master to issue a tax deed to Constantine and Virginia states that the chancellor's decision was based in part on statements made by George. Even if we were to accept as true that George did not pursue his "contract" argument at the initial hearing in December, 1992, it is clear that he made such an argument by way of his handwritten motion, which he filed on January 18, 1993. The chancellor held a hearing on that motion, and stated that he had "considered the claims at [the] previous hearing and overruled them." He again directed the Clerk and Master to issue a tax deed to Constantine and Virginia, which was done on April 4, 1994. Apart from George's petition to rehear, which was denied, the issuance of the tax deed was not further questioned in that proceeding and the decree of the court became final. George made no further claim with respect to the purported agreement until after Constantine died, four years later. Thus, we are of the opinion that the prior judgment of the chancellor directing the Clerk and Master to issue a tax deed to Constantine and Virginia was a final judgment on the merits and that the judgment is *res judicata* as to George's allegation that Constantine purchased the property with a view toward holding it for George's ultimate benefit. The same argument was made in both proceedings and involved the same parties, except that the instant case involves the Estate of Constantine Anagnost, which is clearly in privity with Constantine himself.

-5-

C.

We are further of the opinion that the trial court was correct in holding that the prior judgment is also *res judicata* as to George's argument concerning the "continuation" of the contract. Additionally, with respect to whether there was a land sale contract which was agreed to subsequent to the issuance of the tax deed to Constantine and Virginia, that issue was not pled, and we will not consider it. George brought the instant action for "[b]reach of contract regarding a redemption agreement between Constantine Anagnost and George Anagnost with respect to property previously belonging to George Anagnost and subsequently purchased by Constantine Anagnost as a result of a tax sale in 1991." Summary judgment is appropriate as to this claim. George's claim that he and Constantine entered into a new contract subsequent to the prior proceeding was not raised until the summary judgment process was already underway. Moreover, even if that issue were properly before this court, we are of the opinion that George's proffer of the unsigned promissory note and a copy of the $80,000 cashier's check that Constantine and Virginia procured to enable them to purchase the property is insufficient to prove the existence of a land sale contract arising subsequent to date of the final judgment of the prior action. For the foregoing reasons, we find that the trial court did not err in granting summary judgment to the Estate.

III.

The judgment of the trial court is affirmed. The case is remanded for collection of costs, assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant.

_____
CHARLES D. SUSANO, JR., JUDGE